PARIENTE, J., concurring in part and dissenting in part. I concur with the majority because I agree that Judge Yacucci violated the Code of Judicial Conduct throughout the course of an adversarial and contentious professional relationship that escalated during a contested election between Judge Yacucci and attorney Stephen Smith. I dissent in part because I conclude that a longer suspension of at least ninety days is warranted in light of the totality of Judge Yacucci’s conduct, which occurred over a period of years and was unbefitting of a judicial officer both in the courtroom and on the campaign trail. I recognize that Judge Yacucci, first elected as a county court judge in 2002, has in many respects had an unblemished legal-and judicial career, but we' cannot and do not condone Judge Yacucci’s misconduct as found by the Judicial Qualifications Commission (“JQC”) and approved by this Court. Before the JQC and this Court, Judge Yacucci asserts that his conduct was motivated by “more important larger issues.” He claims that his conduct was motivated by a concern to maintain the independence of the judiciary, which he asserts was under siege by the actions of attorney- Smith, and his employer, the Ticket Clinic. Specifically, Judge Yacucci alleges that attorney Smith engaged in an unethical campaign with the sole goal of obtaining Judge Ya-cucci’s blanket recusal from any of his cases following the campaign. But the conduct of attorney Smith is not before this Court, and Judge Yacucci’s actions in this case, as found by the JQC, show that Judge Yacucci failed to act in a “manner that promoted public confidence in the integrity and impartiality of the judiciary.” See Code of Jud. Conduct, Canon 2(A). Stating in a televised interview in his courtroom that Smith “should not be a lawyer,” “should not be in a courtroom,” and is “truly a disgrace as a judicial candidate and really as a human being” is the type of quintessential conduct that stands contrary to the core principles espoused in our Code of Judicial Conduct. That those comments followed a public altercation at a polling place where Smith claims that Judge Yacucci verbally and physically assaulted him only confirms that Judge Ya-cucci was conducting himself in a manner antithetical’ to the high standards of conduct expected of our judges. As the JQC found, “Judge Yacucci attempted to justify his conduct -by resort to the ‘larger issues’ of judicial independence and its ostensible subversion by the Ticket Clinic.” In re Judge Philip James Yacucci [Jr.], No. 16-496 (Fla. Jud. Qual. Comm’n June 29, 2017), at 22. But as the JQC also observed, Canon 1 requires both judicial integrity and judicial independence. The latter “does not offer judges the power to do as they please.” Id. (quoting In re Eriksson, 36 So.3d 580, 588 (Fla. 2010)). In this case, the majority makes clear that “Judge Yacucci repeatedly violated his duty to be impartial and to disqualify himself from Smith’s cases,” and the “acrimonious relationship between Judge Yacucci and Smith, marked by lawsuits, a public altercation and televised disparagement, the jailing of Smith for contempt, judicial campaign disputes, unsolicited attempts to influence a petition for writ of prohibition, and multiple refusals to disqualify himself, clearly displayed Judge Yacucci’s disregard for proper judicial conduct.” Majority op. at 527. Moreover, “Judge Yacucci did not apologize nor cooperate with the JQC, but instead attempted to justify his actions during the JQC hearings as well as in his briefs to this Court.” Majority op. at 527. Accordingly, the majority properly concluded and Judge Yacucci conceded that he violated the Code of Judicial Conduct. As the JQC observed, a judge is “not a knight-errant, roaming at will in pursuit of his own ideal[s].” Yacucci, No. 16-496 (Fla. Jud. Qual. Comm’n June 29, 2017), at 22 (quoting Benjamin N. Cardozo, The Nature of the Judicial Process (1921)). Apparently Judge Yacucci also claimed to be motivated by the lack of an adequate response from The Florida Bar to his complaint about attorney Smith. Of course, as the JQC observed: The Florida Bar has jurisdiction to investigate and discipline lawyers for their conduct in court and during judicial campaigns. Judge Yacucci’s dissatisfaction with the Florida Bar, and perceived disparity between judges and judicial candidates during a contentious election, did not justify personal efforts to punish Mr. Smith and his employer by other means, including improper comments about their character on television or in the appellate court. Id. Most assuredly, if an attorney undertook the type of cumulative actions as occurred here, this Court would have imposed a suspension longer than thirty days. Just as we expect attorneys to treat judges with respect, judges have an obligation to treat attorneys with respect. If attorneys act improperly, there are procedures judges can properly follow to address a contempt of court. As the JQC observed: Judge Yacucci is an experienced lawyer and judge, who made what he perceived to be a valiant effort to rid St. Lucie County of attempts “to intimidate judges with veiled threats” of future judicial challenges. “His zealous pursuit of a pure society apparently clouded his ability to impartially adjudicate the matters before him. His motives are acceptable, but his methods are not.” [In re] Graham, 620 So.2d [1273,] 1275 [(Fla. 1993) ]. Id. at 23. Judge Yacucci’s cumulative misconduct in this case diminished the public’s perception of the judiciary and, by engaging in this conduct, Judge Yacucci failed to uphold the integrity and independence of the judicial office. If the JQC’s unrefuted findings of misconduct did not cause Judge Yacucci to reflect upon the totality of his actions, I am skeptical that this Court requiring Judge Yacucci to take a judicial ethics course will have its desired effect. See majority op. at 1. For all of these reasons, I would conclude that the conduct in this case warrants, at minimum, a ninety-day suspension.[1] Accordingly, I concur with the majority with respect to its findings regarding Judge Yacucci’s conduct but dissent as to the majority’s imposition of only a thirty-day suspension without pay and would impose a suspension of at least ninety days. QUINCE, J., concurs. . See, e.g., In re Shepard, 217 So.3d 71, 74 (Fla. 2017) (holding that a ninety-day suspension without pay, public reprimand, and costs, was appropriate where judge made an intentionally deceptive campaign ad misrepresenting an endorsement from a local newspaper and failed to take responsibility for her conduct through either an apology or ac-knowledgement of wrongdoing); In re Decker, 212 So.3d 291, 309 (Fla. 2017) (holding that discipline including a six-month suspension, public reprimand, and costs, was appropriate where misconduct included campaign violations, conflict of interest in representation of clients, and lying to the- court and opposing counsel),